## QUIGLEY VS STEPHENS ET AL.

Opinion delivered January 6, 1900.

*1. Indian Lands—Forcible Entry—U. S. Indian Agent.*
Under the intercourse law (Rev. State U. S. 2147) a U. S. Indian Agent is given authority to remove intruders from the Indian country, but this does not confer upon him authority to exercise judicial powers in determining the respective rights of parties to a lease of Indian lands and eject the non-citizen from the leased premises. And where the agent thus exceeds his authority, on the complaint of the Indian citizen, and ejects the tenant and places the landlord in possession, both the landlord and the party ejecting the tenant, are guilty of forcible entry.

Appeal from the United States court for the Northern district.

WILLIAM M. SPRINGER, Judge.

Action by Hiram Quigley against Green Stephens and Georgie Stephens. Judgment for defendants. Plaintiff appeals. Reversed.

On the 12th day of September, 1895, Hiram Quigley, the appellant, entered into a contract of lease in the Creek Nation with Green Stephens and his wife, Georgie Stephens, the appellees, who are Creek citizens. The contract is as follows: "This indenture made this day of 12 Sept., 1895, be and between Green Stephens and Georgie Stephens, his wife citizens of the Creek Nation, parties of the first partys, and Hiram Quigley, of Chickasha, I. T., party of the second party, witnesseth, that the said Green Stephens and Georgie Stephens, of the first party, have by these presents unto the said Hiram Quigley, our place for 12 months or one year.

Situated on Coal creek, and bounded on the north by John Harrison, on the east by Hardy Sells, south by David Colbert, and on the west by Colbert. On consideration that the said Hiram Quigley of the second party, is to fence one secon of land, or one mile square with not less than three wires and post, for the sum of $400.00 four Hundred Dollars, and we Green Stephens and Georgie Stephens party of the first part agree to pay the said Hiram Quigley $250.00 two hundred and fifty dollars for one Dwelling House the same to be made eny place on the place which will suit the said Hiram Quigley's convenience the said Green Stephens and Georgie Stephens agrees to pay to the said Hiram Quigley $100.00 one hundred dollars for one stable, one hay shed $100.00 one Hundred Dollars one corn crib $50.00 fifty dollars one well $50.00 fifty dollars, apple orchard $50.00 fifty dollars, one par orchard fifty dollars $50.00 and one wire hog pasture 7 strans of wire and not less than four acres of ground and is to have $150.00 one hundred and fifty dollars, and the said Hiram Quigley party of the second party break 200 acres of sod land and is to have $8.00 eight dollars pr acre the said Green Stephens and Georgie Stephens party of the second party ares or assigns agrees to pay to the said Hiram Quigley his ares or assigns one year from date the above price for the above mentioned improvements on condisions if the said Green Stephens and Georgie Stephens ares or assigns should for some unknown cause be unprepared to pay in full 12 months from date the above price for the above mensioned improvements to the said Hiram Quigley party of the second party his ares or assigns then the said Hiram Quigley, party of the second shall remain on the place until paid in full and hold all improvements and have full possession of the above boundry and the said Hiram Quigley party of the second party his ares or assigns does agree that if the said Green Stephens ( ) ares or assigns should at the end of one year from date be cramped for money or not prepared

to pay in full the amount due for the improvements above mensioned the said Hiram Quigley agrees to extend the time for payment so long as the said Hiram Quigley is allowed to remain on the same Green Stephens and Georgie Stephens ares or assigns agrees to all the above on condisions should the Green Stephens and Georgie Stephens ares or assigns fail to meet their obligations with the said Hiram Quigley twelve months from date the said Hiram Quigley is to remain on the place providing the said Hiram Quigley pays to the said Green Stephens and Georgie Stephens ares or assigns $241.00 for each one year that said Green Stephens and Georgie Stephens ares or assigns does hereby for himself covenant to and with the said Hiram Quigley that he shall quietly ocupy the premises improvements without hindrance or molestatation from the said Green Stephens and ( ) ares or assigns or enyone claiming or through them. We have hereunto set our hans this the 12 day of Sept. 1895. Hiram Quigley. Green Stephens. Georgie Stephens.''

Under this contract, Quigley at once took possession of the land, and proceeded to make the improvements. At the end of the first year, Stephens not being able to pay for the improvements, Quigley was allowed to remain in possession of the premises for another year, at which time Stephens, without paying a considerable balance, which was still due Quigley under the contract, reported him to the Indian agent for the Five Civilized Tribes as an intruder. The Indian agent, Hon D. M. Wisdom, assumed jurisdiction, and tried the case, and rendered the following decision:

"Department of the Interior, U. S. Indian Service. Union Agency, Muscogee, Ind. Ter., Aug. 7, 1897. Green Stephens and Georgia Stephens vs Hiram Quigley. Decision. In this cause, it appearing that on the 12th day of September, 1895, a contract was entered into by Green Stephens and Georgia Stephens, his wife, citizens of the Creek Nation, .

parties of the first part, and Hiram Quigley, of Chickasha, Indian Ter., a citizen of the United States, party of the second part, upon examination of said contract and its conditions, I find it to be for a term of years, and therefore in violation of the Creek law, which prohibits a lease between its citizens and noncitizens for a longer period than one year, and also in violation of Section 2116, Revised Statutes of the United States [section 4326 Ind. T. Ann. St. 1899], which says: 'No purchase, grant, lease, or other conveyance of land or of any title or claim thereto, from any Indian nation or tribe of Indians shall be of any validity in law or in equity unless the same be made by treaty or convention entered into pursuant to the constitution.' This lease or contract—whatever it may be called—is an agreement between individual Indians and a citizen of the United States for the use and occupation of lands in the Creek Nation, as I said above, for a term of years, and it is not possible that individual citizens can, of their own right, make conveyances or contracts of this kind, which their own nation or tribe is by any express statute prohibited from doing. Were this rule to obtain, noncitizens could take possession of the country, and practically take control of the Creek Nation, by connivance with Creek citizens. This would be intrusion of the worst character, and it is my duty as agent to stop any such proceedings, and I think that Creek citizens who make conveyances of this kind ought to be punished by their own laws, and that white men who enter into them ought to be held as intruders, and put out of the country; and, when an opportunity offers, I shall call the attention of the Creek authorities to such violations of law by their own citizens, and will also enforce the law against white men as above indicated. I therefore declare said contract as of no force and validity whatever, and I further decree that said Hiram Quigley shall vacate said premises on or before the 15th day of December next; otherwise, he will be forcibly dispossessed by a policemen from this

agency. But, it further appearing that the said Hiram Quigley has made certain improvements on said place, and that he has an equitable claim therefor in the courts, he can collect the value of said improvements through the courts; and the said Quigley shall account to the said Green Stephens and Georgia Stephens, his wife, for the use and occupation of said place in controversy until the 15th day of December, 1897, at which date he shall vacate the same. I hold further, in matters of this kind, that a noncitizen, although he may have a claim for improvements (I mean a just, valid and subsisting claim), yet the holding of such claim does not authorize him to hold or occupy the land until the same has been paid, but that he must look for the collection of it to the courts of the country in the ordinary way, and that he has no right to hold over on an arbitrary demand until the same is settled. Respectfully submitted, D. M. Wisdom, United States Indian Agent. Wells.''

Indorsed: ''Hiram Quigley v. Green Stephens. Department of the Interior, United States Indian Service, Union Agency, Muscogee, Ind. Ter., December 21, 1898. David A Lee, Esqr., U. S. Indian Police, Lee, Indian Territory—Sir: You are hereby directed to notify Mr. Hiram Quigley to vacate the place he now occupies, and which is the property of Green and Georgia Stephens, which place is bounded on the north by John Harrison, on the east by Harvey Sells, on the south and on the west by David Colbert, and situated on Coal creek, Creek Nation, Ind. Ter. Direct him to vacate the place within ten days after date of service of this notice; and, if he fails to do so within that time, then you are directed to remove him, with his effects, off of said place, and you will do so with as little friction and as much humanity as possible, consistent with the due execution of this order. This order is issued in pursuance of the decision of this agency of August 7, 1897, in which it was decreed that said Quigley should vacate said place by the 15th day

of the present month (December, 1897), it appearing to this agency that said Quigley has failed to obey said decision. Very respectfully, D. M. Wisdom, U. S. Indian Agent.''

This order was finally executed on January 5, 1898, by the Indian police, who was acting under the direction of the agent, forcibly dispossessing the appellant, and this suit is brought under the statute of forcible entry and detainer to recover possession of the land. Quigley was only removed from the possession of the premises, and not from the territory. The court below, acting upon the assumption that the Indian agent had concurrent jurisdiction with the courts to try and determine such an issue, in substance held that the case was res judicata, and therefore, on motion of the defendant Stephens, directed a verdict for him. The appellant appealed, and the case is regularly here.

*W. F. Seaver* and *N. A. Gibson*, for appellant.

*W. S. Wolfenberger* and *W. T. Hutchings*, for appellees.

CLAYTON, C. J. The principal question for our determination in this case is, had the Indian agent, under the laws of the United States, jurisdiction to try and determine this case, and execute his order therein? The Indian agent is an executive officer of the United States, and as such, if he undertakes to excercise judicial powers, as he did in this case, his judicial or quasi judicial authority must be expressed in some statute of the general government. The general powers of an Indian agent as set forth in section 2058, Rev. St. U. S. (section 4268, Ind. T. Ann. St. 1899), and read as follows: ''Each Indian agent shall, within his agency, manage and superintend the intercourse with the Indians, agreeably to law; and execute and perform such regulations and duties, not inconsistent with law, as may be prescribed by the president, the secretary of the interior, the commissioner of Indian affairs, or the superintendent of

Powers of U. S. Indian agent.

Indian affairs." In title 28, ("Indians") Rev. St. U. S. (sections 2039-2157, Ind. T. Ann. St. 1899), there are many special duties of an Indian agent set forth. It is only necessary, however, for the purposes of this case, to refer to the following: Section 2064, Rev. St. U. S. (section 4274, Ind. T. An. St. 1899): "Indian agents are authorized to take the acknowledgment of deeds and other instruments of writing, and administer oaths in investigations submitted to them in Indian country, pursuant to such rules and regulations as may be prescribed for that purpose by the secretary of the interior." Section 2147 (4357): "The superintendent of Indian affairs, and the Indian agents and subagents shall have authority to remove from the Indian country all persons found therein contrary to law." Under these provisions of law, if the Indian agent were investigating this case with a view of enforcing the law against intruders, he would unquestionably have the power, not only to investigate, but to formulate his judgment in the shape of an order, and to execute it by removing the party beyond the limits of the Indian Territory, if he should find him to be there contrary to law. But the order of the Indian agent heretofore set out clearly shows that his investigation was for no such purpose. It is true that in the order he says, "And that white men who enter into them [contracts of this kind] ought to be held as intruders, and put out of the country," and that he will enforce the law against white men as indicated, but in this particular case he does not do it. His order is: "I therefore declare said contract as of no force and validity whatever, and I further decree that the said Hiram Quigley shall vacate said premises on or before the 15th day of December next; otherwise he will be forcibly dispossessed by a policeman from this agency. But, it further appearing that the said Hiram Quigley has made certain improvements on said place, and that he has an equitable claim therefor in the courts, he

can collect the value of said improvements through the courts; and the said Quigley shall account to the said Green Stephens and Georgia Stephens, his wife, for the use and occupation of said place in controversy until the 15th day of December, 1897, at which date he shall vacate the same." This order was made August 7, 1897. On the 21st day of December, 1897, the following order was made directed to one David A. Lee, United States Indian police: "You are hereby directed to notify Mr. Hiram Quigley to vacate the place he now occupies, and which is the property of Green and Georgia Stephens, which place is bounded on the north by John Harrison, on the east by Harvey Sells, on the south and on the west by David Colbert, and situated on Coal creek, Creek Nation, Ind. Ter. Direct him to vacate the place within ten days after date of service of this notice; and if he fails to do so within that time, then you are directed to remove him, with his effects, off of said place, and you will do so with as little friction and as much humanity as possible, consistent with the due execution of this order. This order is issued in pursuance of the decision of this agency of August 7, 1897, in which it was decreed that said Quigley should vacate said place by the 15th day of the present month (December, 1897,) it appearing to this agency that Quigley has failed to obey said decision. Very respectfully, D. M. Wisdom, U. S. Indian Agent." And this was the order that was executed by forciby ejecting Quigley from the premises. The record fails to show how far he was removed from the premises., but he was not removed from the Creek Nation. It is quite clear that the Indian agent in this case was not investigating it with a view of determining whether or not the appellant was an intruder, but was passing judicially upon the rights of the parties. Construing and annulling contracts, finding equities between parties to the contract, and ejecting persons from premises upon which they had

entered under written agreement, and upon which they had expended large sums of money, are powers which do not belong to an Indian agent in this territory. They are vested solely and exclusively in the courts. The lease, on its face, purports to be for one year, which, under the law of the Creek Nation was a lawful one, and not in violation of any law of the United States. Section 2116, Rev. St. U. S. (section 4326, Ind. T. Ann. St. 1899), referred to by the agent in his order, does not apply to leases of this kind. It applies only to conveyances and leases executed by the tribes or nations. By the last clause of section 29 of the act of congress of May 2, 1890 (section 29, Ind. T. Ann. St. 1899), an act, among other things "to enlarge the jurisdiction of the United States courts in the Indian Territory," the courts were given jurisdiction "in all civil cases except cases over which the tribal courts have exclusive jurisdiction," and "in all cases on contracts entered into by citizens of any tribe or nation with citizens of the United States in good faith, and for valuable consideration, and in accordance with the laws of such tribe or nation and such contracts shall be deemed valid and enforced by such courts." But because of the fact that by the terms of the lease, if the valuable improvements which were to be put on the place should not be paid for at the end of the year, the lessee, as security for its payment, was to retain possession until he should be paid, the Indian agent, at the suit of the lessor held that the lease was for a term of years, and therefore void, and proceed to give possession to the lessor, notwithstanding he had not paid, nor did he offer to pay, for the benefits which he had received under the contract. The lessee was in possession. He had complied with his contract, and, in accordance with its terms, at a large expense to himself, had erected on the premises valuable and lasting improvements; and, whether the lease was void or valid, it did not lay in the mouth of the lessor, until he had

(19)

paid for the benefits he had derived under it, to say that it was void, and ask for possession without payment. The law permits no such injustice, either before the Indian agent or any other tribunal exercising judicial functions. But whether the deed was void or valid, the rights of the parties to it, its construction, the disposition of the properties acquired under it, and the law and the equities of the case, cannot be passed upon or enforced by an Indian agent. The courts alone possess these powers. The Indian agent complains in his decree "that, if this rule were to prevail, noncitizens could take possesion of the country, and practically control the tribes by connivance with their citizens." Whether this be issue or not, the fact is—and it is one of common knowledge—that nine-tenths of the farms of the Indian Territory have been opened up and made valuable by contracts substantially like this, and the Indian owners have been the direct beneficiaries. The courts here, without passing upon the validity of such contracts, have universally held that, until the improvements provided for in the contract were paid for, the Indian lessor was estopped to set up the invalidity of the lease; and recently, in harmony with these decisions, by act of congress (the Curtis bill,—Ind. T. Ann. St. 1899, §§ 57q–57z91) it is provided that the lessee shall not be ejected until he shall have been paid for his improvements. We hold that the Indian agent had no jurisdiction to try this case, and, therefore, when, at the instance of the appellee, he, using his police for that purpose, forcibly ejected the appellant from the premises, and put the appellee in possession, all the parties to the transaction—the appellees as well as the Indian police, who is made a party to this suit–were guilty of an act of forcible entry, and that, therefore, the court below erred in instructing the jury to find their verdict for the appellees. The judgment of the court below is reversed, and the cause remanded.

THOMAS, TOWNSEND, and GILL, JJ., concur.