STEPHENS et al. v. QUIGLEY.

(Circuit Court of Appeals, Eighth Circuit. November 2, 1903.)

No. 1,869.

1. APPEAL—REVIEW—WAIVER OF ERROR.

The defendant in an action of forcible entry and detainer, by asking an instruction stating that "in this case it is conceded that the plaintiff was forcibly removed from the premises in controversy, * * * and is therefore entitled to recover possession of the premises," abandoned a defense justifying the alleged trespass, and waived an exception taken to the exclusion of evidence offered to sustain such defense.

2. INDIAN AGENTS—POWERS—DETERMINATION OF JUDICIAL QUESTIONS.

The authority conferred on Indian agents by Rev. St. §§ 2147, 2149, 2150, to "remove from the Indian country all persons found therein contrary to law," does not vest such an agent with power to determine a private controversy respecting the validity of a lease under which a noncitizen has gone into possession of Indian lands and made valuable improvements thereon, and to order his eviction from such land, without his removal from the Indian country. Such contracts involving private property rights are matters for adjudication by the judicial, and not the executive, department.

In Error to the United States Court of Appeals in the Indian Territory.

Preston C. West (William T. Hutchings, on the brief), for plaintiffs in error.

Nathan A. Gibson, for defendant in error.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

THAYER, Circuit Judge. This case comes from the Court of Appeals in the Indian Territory, and is an action of forcible entry and detainer, which was originally brought by Hiram Quigley, the defendant in error, against Green Stephens and Georgia Stephens, his wife, who are the plaintiffs in error, in the United States Court in the Northern District of the Indian Territory. The remaining plaintiffs in error appear to have joined in the petition for a writ of error, but for what reason they are named as plaintiffs in error does not appear, unless it be that they became sureties on the appeal bond when the defendants below took the case by appeal to the Court of Appeals in the Indian Territory. The complaint which was filed by the plaintiff below alleged, in substance, that on January 5, 1898, he was in the peaceable possession of a tract of land containing about 640 acres, located in the Creek Nation; that he was so in possession under the terms of a contract which he had entered into with Green Stephens and Georgia Stephens, the defendants below; that he entered into possession of the tract of land in question under said contract in the month of September, 1895, and remained in possession continuously until January 5, 1898; that in the meantime he made valuable improvements thereon, which are described in the complaint, and were of the total value of $1,575; that while in the peaceable possession of said tract of land, the defendants, together with their servants and agents, on January 5, 1898, entered upon the premises with force, broke open the door of a house which he had erected on the premises, and forcibly ejected the plaintiff's mother therefrom, together with the plaintiff's household effects; and that they thereafter retained possession of the land and premises, to the plaintiff's damage in the sum of $500. The defendants below filed an answer to the aforesaid complaint, wherein they denied that they ever dispossessed the plaintiff in the manner set forth in his complaint, but averred the fact to be that he was dispossessed of the premises by one David A. Lee, a member of the United States Indian police, and that he was so dispossessed by virtue of a decision made on August 7, 1897, by D. M. Wisdom, United States Indian agent of the Five Civilized Tribes of Indians, wherein it was decided that the plaintiff, Quigley, was an intruder in the Creek Nation. The defendants further alleged that in pursuance of such decision an order was issued to David A. Lee, a member of the Indian police, in virtue of which order the said Lee did dispossess the plaintiff from the premises described in his complaint. Notwithstanding this plea that the trespass complained of was committed by Lee, a member of the Indian police, yet the testimony showed without contradiction that the defendants below were present when the alleged trespass was committed, and that they aided and assisted Lee in ejecting the plaintiff from the premises.

Counsel for the plaintiffs in error say that the principal point upon which they rely to obtain a reversal of the judgment below is the error of the court in refusing to permit them to prove the action of the Indian agent in removing the plaintiff below from the land which forms the subject-matter of the controversy in this action. In view

of this statement it is the only question which requires consideration at our hands.

The bill of exceptions discloses that the defendants below did offer in evidence what they termed a decision of Col. D. M. Wisdom, U. S. Indian Agent, which appears to have been rendered on August 13, 1897, in the case of Green Stephens and Georgia Stephens against Hiram Quigley; also an order signed by D. M. Wisdom, United States Indian agent, dated December 21, 1898, and addressed to David A. Lee, United States Indian police. Counsel for the plaintiff below objected to the admissibility of these documents as being incompetent and irrelevant, whereupon counsel for the defendants below remarked, "I suppose the court will sustain the objection." The court replied, "Yes, sir," whereupon counsel for the defendants said, "To which we except." No other evidence appears to have been offered in behalf of the defendants below, the plaintiffs in error here, and at the conclusion of the trial an instruction was asked by them, which the court gave; said instruction being as follows:

"In this case it is conceded that the plaintiff was forcibly removed from the premises in controversy on the 5th day of January, 1898, and is therefore entitled to recover possession of the premises. In addition thereto, he is entitled to recover the damages he may have sustained in being kept out of possession by the defendants. * * *"

There is much force in the suggestion that by asking this instruction, which conceded that the plaintiff had been forcibly and wrongfully ejected from the premises, and was entitled to be restored to possession, the defendants below waived the benefit of the exception which they had previously taken to the exclusion of the decision and order of the Indian agent. It is not perceived that it was necessary or proper for the defendants to make the concession and ask the trial judge to declare affirmatively that Quigley was "entitled to recover possession," unless they thereby intended to abandon their plea that the alleged trespass was committed by Lee, and was justifiable, because done in pursuance of the order of the Indian agent. If their purpose was to confine the action of the jury to an assessment of the damages for the alleged wrong, it was obviously unnecessary to thus formally concede that a wrong had been committed, and that the plaintiff below was entitled to recover. By the instruction in question the defendants seem to have voluntarily acquiesced in the opinion of the trial judge that the decision and order of the Indian agent constituted no defense to the action.

But, waiving this view of the case, we think, for other reasons, that the record discloses no reversible error. The decision of the Indian agent to which the contract between Stephens and wife and Quigley was appended (quoting merely the pith of the decision) was as follows:

"I therefore declare said contract as of no force and validity whatever, and I further decree that the said Hiram Quigley shall vacate said premises on or before the 15th day of December next; otherwise he will be forcibly dispossessed by a policeman from this agency. But it further appearing that the said Hiram Quigley has made certain improvements on said place, and that he has an equitable claim therefor in the courts, he can collect the

value of said improvements through the courts. And the said Quigley shall account to the said Green Stephens and Georgia Stephens, his wife, for the use and occupation of said place in controversy until the 15th day of December, 1897, at which time he shall vacate the same. I further hold, in matters of this kind, that a noncitizen, although he may have a claim for improvements (I mean a just, valid, and subsisting claim), yet the holding of such claim does not authorize him to hold or occupy the land until the same has been paid, but that he must look to the collection of it to the courts of the country in the ordinary way, and that he has no right to hold over on an arbitrary demand until the same is settled."

The order of the Indian agent was as follows (quoting only so much thereof as seems to be material):

"You are hereby directed to notify Mr. Hiram Quigley to vacate the place he now occupies, and which is the property of Green and Georgia Stephens, which place is bounded," etc. "Direct him to vacate the place within ten days after date of service of this notice and if he fails to do so before that time then you are directed to remove him, with his effects, off of said place and you will do so with as little friction and as much humanity as possible consistent with due execution of this order."

The contract appended to the foregoing decision, and thereby declared to be invalid, appears to have been one whereby Stephens and wife rented to Hiram Quigley the premises in controversy for the term of 12 months, binding him to fence the land, to erect a dwelling house, to erect a stable, shed, and corncrib, to dig a well, plant an apple and pear orchard, make a pasture for hogs, and break up 200 acres of land. By the terms of the agreement a value was placed on these improvements, and Stephens and wife agreed that Quigley should remain on the place until the improvements were fully paid for by them. It was further provided that, if Stephens and wife were not able to pay for the improvements at the end of the first year, Quigley should extend the time of payment so long as he was allowed to remain in the possession of the land, but if he remained longer than one year he was to pay rent thereafter at the rate of $241 per year.

We are advised by numerous cases that have heretofore come to this court for decision from the Indian Territory (and for that reason we feel fully justified in taking judicial notice of the fact) that such contracts as the one above outlined are by no means uncommon in the Indian Territory. Indeed, we know that very many of such contracts have been made between Indians and noncitizens, during the past 15 years, in all parts of the Indian Territory, and that hundreds of people, if not thousands, have expended their time and money in the improvement of wild lands on the faith of such contracts, and on the assumption that they were valid, or at least that the nominal rights thereby acquired would not be challenged. We have no doubt that the value of all land and other property in the Indian Territory has been greatly enhanced by the labor bestowed and the money expended in the performance of such agreements. In view of these facts, the question whether such contracts are utterly void, and whether any rights have been acquired thereunder which the law will respect, are questions for judicial consideration, rather than for hasty and arbitrary determination by executive officers. Especially is this so in the Indian Territory, where a judicial

system has been established, and where courts have been created that are fully empowered to deal with such questions as they arise, and to dispose of them according to well-settled principles of law and equity.

Conceding, as we must, that under the statutes of the United States (Rev. St. U. S. §§ 2147, 2149, 2150—which are the only sections that counsel for the plaintiffs in error invoke to sustain the order of the Indian agent) "Indian agents and subagents * * * have authority to remove from the Indian country all persons found therein contrary to law," and that "the Commissioner of Indian Affairs is authorized, * * * with the approval of the Secretary of the Interior, to remove from any tribal reservation any person being therein without authority of law or whose presence within the limits of the reservation may, in the judgment of the Commissioner, be detrimental to the peace and welfare of Indians"; and conceding further that "the military forces of the United States may be employed * * * in the apprehension of every person who may be in the Indian country in violation of law and in conveying him immediately from the Indian country by the nearest convenient and safe route to the civil authority of the territory or judicial district in which such person shall be found, to be proceeded against in due course of law," yet in the present instance the Indian agent does not seem to have exercised or attempted to exercise the particular power with which he was vested—that is, "to remove from the Indian country all persons found therein contrary to law." He did not order or decree that Quigley should be removed from the Indian country, but only that he should vacate certain premises. After the order was fully executed according to its terms, Quigley still remained in the Indian country, where his presence, if "contrary to law," must have been as detrimental to the peace and welfare of the Indians as it was before the order was made and executed.

The Indian agent in question seems to have intervened in a mere private controversy between two individuals, one of whom happened to have an Indian wife, concerning the right to the possession of a certain tract of land, and to have adjudicated upon that controversy, which involved important questions of law, with no intention of ordering Quigley's removal from the Indian country even if he was there without right. We are of opinion that an order of that nature, made under such circumstances, did not justify the acts of which Quigley complained, and that it was properly excluded. The Indian agent, being an executive officer, should have kept strictly within the limits of his authority. He did not do so, but exceeded it, having no intention, apparently, of doing what he may have had authority to do; that is, ordering Quigley's removal from the Indian country. Moreover, he undertook to pass judgment on the validity of a private contract between individuals, and to determine the rights of the parties thereunder, thereby assuming the exercise of judicial functions.

We agree with the opinion expressed by the Court of Appeals in the Indian Territory in this case when it was first before that

court for review (54 S. W. 814, 817), that the order of the Indian agent afforded the plaintiffs in error no protection, and the judgments below are accordingly affirmed.

VAN DEVANTER, Circuit Judge. I rest my concurrence in the judgment of affirmance upon the view that the plaintiffs in error, by requesting and securing an affirmative instruction to the jury that, "in this case it is conceded that the plaintiff was forcibly removed from the premises in controversy on the 5th day of January, 1898, and is therefore entitled to recover possession of the premises," abandoned their defense predicated upon the order of the Indian agent, and waived their exception to the court's refusal to admit that order in evidence.